IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**AARON I.,**[1]

          Plaintiff,

   v.

**KILOLO KIJAKAZI**, Acting
Commissioner of Social Security,

          Defendant.

Case No. 1:21-cv-877-SI

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

Aaron I. brings this appeal challenging the Commissioner of the Social Security Administration's (Commissioner) denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

A district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id*. (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'"  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)).  Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* When the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray,* 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

I.    **PLAINTIFF'S APPLICATION**

Plaintiff worked in the construction industry until 2017 after a coworker dropped a board on his foot. AR 343. Plaintiff filed his applications for DIB and SSI in March 2019, alleging disability beginning June 19, 2017. AR 289-307. His claims were denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). AR 195-202, 205-15. After an administrative hearing held in December 2020, ALJ Matthew Kawalek issued a written opinion denying Plaintiff's claims. AR 77-105, 13-40. The Appeals Council

denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  AR 1-7. This appeal followed.

## II.     THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps.  *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001).  If the claimant fails to meet the burden at any of those steps, the claimant is not disabled.  *Id*.; *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity (RFC), age, education, and work experience."  *Tackett*, 180 F.3d at 1100.  If the Commissioner fails to meet this burden, the claimant is disabled.  *Bustamante,* 262 F.3d at 954 (citations omitted).

III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff

was disabled. AR 14-34. At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since his alleged onset date of June 19, 2017. AR 19. At step two, the

ALJ determined that Plaintiff suffered from the following severe impairments:

> status post Lis Franc fracture/traumatic injury to the right foot status
> post surgery; ACL tear of the right knee status post arthroscopic
> surgery; partial supraspinatus tear of the right shoulder; mild to
> moderate sensorineural hearing loss of the left ear; tinnitus; obesity;
> a neurocognitive disorder (called either mild neurocognitive
> disorder and encephalomacia status post traumatic brain injury
> ("TBI")); and an affective disorder (called either persistent
> depressive disorder or depression).

AR 20.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination

of impairments that meets or equals a Listing. AR 20-21. The ALJ then assessed Plaintiff's RFC,

finding that Plaintiff retained the ability to perform a range of light work with the following

limitations:

> [Plaintiff] can occasionally lift/carry 20 pounds and frequently
> lift/carry 10 pounds. He can stand and/or walk 4 hours out of an
> eight-hour workday and sit 6 hours out of an 8-hour workday. He
> can frequently operate foot controls with the right lower extremity.
> The claimant can never climb ladders, ropes, or scaffolds. He can
> occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs.
> He can frequently reach with the right upper extremity. He can
> tolerate no more than a moderate noise level. Mentally, he is limited
> to understanding, remembering, carrying out, and maintaining
> attention and concentration on no more than simple tasks and
> instructions, defined specifically as those job duties that can be
> learned in up to 30 days' time. He can sustain only ordinary routines
> and make no more than simple, work-related decisions. He cannot
> perform work at a fast-paced production rate.

AR 23.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. AR 31. At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. AR 32-33. The ALJ therefore concluded that Plaintiff was not disabled from the alleged onset date through January 5, 2021, the date of the ALJ's decision. AR 33.

## **DISCUSSION**

Plaintiff argues that the ALJ erred by (1) improperly applying a presumption of nondisability; (2) improperly evaluating the medical opinions of David LaCourt, Ph.D., and Kris Lichtle, PA; (3) improperly rejecting Plaintiff's subjective symptom testimony; and (4) rejecting the lay testimony without comment.

## I.    PRESUMPTION OF NONDISABILITY

Plaintiff first argues that the ALJ erred by applying a presumption of nondisability based upon Plaintiff's prior unsuccessful application for benefits. Here, Plaintiff previously filed applications for DIB and SSI and received an unfavorable ALJ decision finding Plaintiff not disabled from March 27, 2012, through August 18, 2015. AR 17, 178-94. Agency regulations provide that:

> When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption.

Acquiescence Ruling (AR) 97-4(9), 1997 WL 742758, at *3. In accordance with Agency regulations, the ALJ found that the denial of Plaintiff's prior claims warranted a presumption of continuing nondisability, and that Plaintiff did not rebut this presumption. AR 17.

Plaintiff argues that this was error because the evidence of the prior decision was not proffered to Plaintiff at the administrative hearing, and because Plaintiff's circumstances changed

after the date of the prior denial of benefits.[2] ECF 17, at *7. Any error in the ALJ's application of the presumption of continuing nondisability, however, was harmless because the ALJ also performed the sequential analysis and evaluated Plaintiff's RFC based on the current medical record. AR 16-27. *See Cha Yang v. Comm'r*, 488 F. App'x 203, 204 (9th Cir. 2012) (unpublished) (concluding that the ALJ erred by failing to consider the claimant's changed circumstances, but that the error was harmless because "the ALJ in fact weighed [the] medical evidence"); *Conrad v. Berryhill*, 2018 WL 437460, at *4 (C.D. Cal. Jan. 16, 2018) (finding harmless error because "[t]he ALJ did not in fact adopt the prior ALJ's RFC determination; he independently reviewed medical evidence from after the [prior] decision and used that evidence in determining Plaintiff's RFC after finding that she had established new severe impairments."); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (An ALJ's error is harmless where it is "'inconsequential to the ultimate nondisability determination.'" (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In sum, because the ALJ performed the sequential evaluation process, the Court concludes that the ALJ's application of the presumption of nondisability does not constitute reversible error.

## II.    MEDICAL OPINION EVIDENCE

Plaintiff next argues that the ALJ improperly evaluated the opinions of psychological examiners David LaCourt, Ph.D., and Kris Lichtle, PA. An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

---

[2] Here, the prior denial indicates that Plaintiff's traumatic brain injury (TBI) was non-severe through August 18, 2015; by contrast, the Commissioner's most recent decision lists TBI and other impairments as "severe" at step two of the sequential analysis. AR 20.

thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

Dr. LaCourt and PA Lichtle performed a consultative psychological examination with Plaintiff in May 2019. AR 538. The examiners diagnosed persistent depressive disorder with pure dysthymic syndrome and mild neurocognitive disorder secondary to TBI. AR 540. They found no limitation in Plaintiff's ability to understand and remember very short information/instructions but assessed mild limitation in Plaintiff's ability to understand and remember detailed/complex instructions and interact with coworkers and supervisors. AR 540. Dr. LaCourt and PA Lichtle also assessed moderate limitation in Plaintiff's ability to work without supervision, interact with the public, and adapt to changes in the workplace. AR 540-41. The psychological examiners also assessed marked limitations in Plaintiff's ability to sustain concentration and persistence for carrying out instructions, as well as in Plaintiff's ability to concentrate. AR 540.

The ALJ found this opinion unpersuasive. AR 30. First, the ALJ noted that the examiners' conclusion that Plaintiff had limitations in sustained performance of simple tasks conflicted with Plaintiff's testimony. AR 30. An ALJ may discount part of a medical opinion when it is inconsistent with the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Plaintiff testified at the administrative hearing that he "retains good working knowledge of skills

learned in his many years in construction." AR 30. Plaintiff was able to maintain a job at Fred Meyer during the relevant period and reported working at least 20 hours per week. AR 20, 85-86. On this record, it was reasonable for the ALJ to infer from Plaintiff's consistent work activities that Plaintiff was not as limited as alleged in his ability to sustain performance of simple tasks. *Tommasetti*, 533 F.3d at 1041.

The ALJ also found unpersuasive Dr. LaCourt and PA Lichtle's assessment of Plaintiff's marked impairment in sustained concentration, persistence, and pace; moderate impairment in working without supervision; and moderate limitations in social interaction with the public and mild with coworkers and supervisors. The ALJ concluded that these limitations were inconsistent with Plaintiff's testimony and work activities. AR 30. The ALJ is required to consider the supportability of a medical opinion given the longitudinal record. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1). Here, the ALJ found that these alleged limitations were inconsistent with the Plaintiff's testimony "that he interacts well with the public but has had some difficulties with coworkers in his current job at Home Depot." AR 30. Further, in contrast to the assessment that Plaintiff had "moderate limitation" when interacting with the public or coworkers, Plaintiff reported no difficulty getting along with others. AR 388-89. It was reasonable for the ALJ to conclude from Plaintiff's ability to work in a "largely public environment" that Dr. LaCourt and PA Lichtle's assessments of marked and moderate impairments in concentration, working without supervision, and social interaction were less than persuasive. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1). In sum, the ALJ properly considered the persuasiveness of Dr. LaCourt and PA Lichtle's medical opinions in light of the Agency's regulations and supported his conclusions with substantial evidence. The ALJ's evaluation of the medical evidence was therefore free of harmful error.

### III.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff next argues that the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison*, 759 F.3d at 1017. At the administrative hearing, Plaintiff testified that he was unable to sustain full-time work primarily due to (1) knee pain; (2) a chronic, debilitating foot condition; and (3) lack of sleep. AR 88-89. At the time of the hearing, Plaintiff was working twenty hours per week at Fred Meyer. AR 85. Plaintiff testified that this part-time work was "really all that [he could] handle . . . physically and cognitively." *Id.* Plaintiff stated that he could maintain focus for four hours before needing a two-hour rest, and that short-term memory loss affected his work performance. AR 89-90, 403.

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. AR 25. The ALJ first found that Plaintiff's testimony was unsupported by the medical evidence of record. The ALJ may consider objective medical evidence when assessing a claimant's testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Carmickle*, 533 F.3d at 1161. Here, although Plaintiff sustained an injury to his right foot at work in 2017, X-rays were unremarkable, and his provider noted that Plaintiff walked normally and had no swelling or deformity. AR 26-27, 527, 589-90. During a consultative examination in June 2019, Plaintiff had normal gait, balance, and unremarkable physical examination findings. AR 28, 546-48. As the ALJ noted, physical examination findings throughout the record are generally unremarkable except during temporary periods of acute injury. AR 28. While Plaintiff alleged "a significant amount of short-term memory problems" due to poor sleep (AR 89), the ALJ noted that treating providers routinely observed normal mental status and psychiatric findings, and psychological examiners found no objective deficits with Plaintiff's remote or recent memory. AR 22, 499, 539, 546, 571, 590, 594, 670. While this evidence is not sufficient to discount Plaintiff's testimony, it does support the ALJ's

conclusion that Plaintiff's testimony regarding his chronic, debilitating foot pain and memory issues was unpersuasive. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ next found Plaintiff's testimony unpersuasive because Plaintiff sought and received only "sparse treatment" during the relevant period. AR 28. A claimant's course of treatment is a valid consideration for assessing the persuasiveness of a claimant's testimony. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Evidence of medical treatment successfully relieving symptoms can undermine a claimant's allegations of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, while Plaintiff alleged disability in part due to a "Lisfranc fracture-metatarsals 2 & 3 and lateral cuneiform" (AR 342), Plaintiff underwent a successful fusion treatment in 2012 that resulted in good pain control. AR 25, 631, 633. The ALJ also noted that despite Plaintiff's allegation that he was unable to work a full time job due to musculoskeletal pain, Plaintiff took "no medications for pain." AR 24. In September 2017, Plaintiff received treatment for acute left leg pain and was prescribed antibiotics after his provider noted redness and tenderness, though other findings were normal. AR 27, 501, 524, 527. In April 2019, Plaintiff reported new left knee pain after tripping over his cat and received a prescription for ibuprofen and a knee brace, which he used "for a while" until he felt better. AR 27, 647. In sum, Plaintiff's treatment record provides additional support for the ALJ's conclusion that Plaintiff was less limited than alleged in his testimony. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Finally, the ALJ discussed Plaintiff's regular activities as further evidence that his testimony was unpersuasive. AR 28. An ALJ may find a claimant's testimony unpersuasive when the claimant's daily activities conflict with his alleged level of impairment. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). Here, as discussed above, Plaintiff returned to part-time work in 2020 and was also able to complete home improvement projects and other activities. AR 28.

Specifically, Plaintiff testified that when he was not working, he spent his time "doing fixer up type stuff" around his house, such as demolishing and rebuilding a deck, completing drywall and framing repairs, and fixing his roof. AR 91-92. Plaintiff also testified that he spent 30 minutes a day cleaning his house and regularly went shopping. AR 385. While Plaintiff claimed that he could work no more than four hours at a time before needing to rest for two hours (AR 403), he testified at the administrative hearing that he worked up to five-hour shifts at Fred Meyer (AR 46, 97) and would occasionally work longer hours if he was in the middle of a project. AR 86. On this record, Plaintiff's activities constitute a clear and convincing reason to discount Plaintiff's allegations of debilitating pain and limitations. *Ahearn*, 988 F.3d at 1117. The ALJ's evaluation of Plaintiff's testimony was supported by substantial evidence and is therefore affirmed.

## IV.    Lay Testimony of Christopher N.

Plaintiff final argument is that the ALJ erred by rejecting the lay testimony of Plaintiff's friend, Christopher N. Mr. N. reported that Plaintiff has extreme difficulty prioritizing important activities and understanding the nature of a situation and frequently loses his patience. AR 355. Mr. N. also reported that Plaintiff suffers from severe tinnitus, which prevents him from sleeping, and that Plaintiff's conditions affect his ability to hear, remember, complete tasks, concentrate, understand, follow instructions, follow directions, and follow through on everyday tasks. AR 355, 359. Mr. N. further testified that Plaintiff has problems with authority figures and was fired from a previous job due to social problems. AR 360.

The ALJ considered this testimony, but stated that the regulations do not require him to "articulate how [he] considered evidence from such non-medical sources." AR 31. The revised regulations state that the ALJ is "not required to articulate how he consider[s] evidence from nonmedical sources" using the same criteria for medical sources, 20 C.F.R. §§ 404.1520c(d) and

416.920c(d). This, however, "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Joseph M. R. v. Comm'r*, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019).

Although the ALJ failed to articulate specific reasons for rejecting the lay opinion of Mr. N., any error is harmless because his testimony was substantially similar to Plaintiff's testimony. When an ALJ's rationale for discounting a claimant's testimony applies equally to the nonmedical source statements, any error in failing to provide adequate reasons to reject the nonmedical source statements is harmless. *Molina*, 674 F.3d at 1117 (the lack of error in articulating a reason to reject lay witness statements was harmless); *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (concluding that an ALJ's valid reasons to reject claimant's testimony also applied to the lay statements). Here, Mr. N. described symptoms that mirrored Plaintiff's own allegations, such as difficulty prioritizing and completing activities, memory problems, and difficulty sleeping, organizing, and concentrating. AR 354-55, 359-60. As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. On this record, the ALJ's error in rejecting Mr. N.'s testimony without comment was harmless. *Molina*, 674 F.3d at 1117.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

DATED this 4th day of October, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge